## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MORPHOTRUST USA, LLC,<br>296 Concord Road, Suite 300<br>Billerica, MA 01821 | :<br>:<br>: CIVIL ACTION<br>: |
| Plaintiff, | :<br>: |
| v. | : No.<br>:<br>: |
| OPSEC SECURITY, INC.,<br>7333 W. Jefferson Avenue<br>Lakewood, CO 80235 | :<br>:<br>:<br>: |
| Defendant. | :<br>: |

## **COMPLAINT**

1.     Plaintiff MorphoTrust USA, LLC. ("MorphoTrust") brings this action for breach of contract and breach of implied and express warranties arising out of defective laminate produced by defendant OpSec Security, Inc. ("OpSec").

2.     As detailed below, OpSec manufactured and sold to MorphoTrust defective, specially ordered laminate that OpSec knew was to be used in government-issued identification cards and driver's licenses ("ID Cards") produced by MorphoTrust under contract with the Commonwealth of Pennsylvania.  At an expense in excess of eight hundred thousand dollars, MorphoTrust has been required to reprint hundreds of thousands of ID Cards to replace the ID Cards created with OpSec's defective laminate.  OpSec, however, has failed and refused to compensate MorphoTrust for its damages in connection with OpSec's breach.

## PARTIES

3.      MorphoTrust is a Delaware limited liability corporation with its principal place of business at 296 Concord Road, Suite 300, Billerica, Massachusetts 01821.  MorphoTrust is a wholly-owned subsidiary of Morpho USA, Inc., a Delaware corporation with its principal place of business at 2201 W. Royal Lane, Suite 150, Irving, Texas 75063.

4.      OpSec is a Colorado corporation with its principal place of business at 7333 W. Jefferson Avenue, Lakewood, Colorado 80235.  OpSec's manufacturing facility is located at 1857 Colonial Village Lane, Lancaster, Pennsylvania 17601.

## JURISDICTION AND VENUE

5.      Pursuant to 28 U.S.C. § 1332(a), this Court has original jurisdiction over this action as there is complete diversity between plaintiff MorphoTrust and defendant OpSec, and the amount in controversy exceeds $75,000.

6.      Pursuant to 42 PA. C.S. §§ 5322(a)(1) and (a)(2), OpSec is subject to personal jurisdiction in the Commonwealth of Pennsylvania because it transacts business in the Commonwealth and has contracted to supply goods in the Commonwealth.

7.      Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in this District because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTUAL BACKGROUND

### THE CONTRACT BETWEEN MORPHOTRUST AND OPSEC

8.     MorphoTrust is an identity solutions provider that specializes in producing ID Cards.  MorphoTrust provides ID Cards for forty-two states, including the Commonwealth of Pennsylvania.

9.     OpSec manufactures and sells products and processes used to protect documents and ID Cards against counterfeiting.

10.     In October 2013, MorphoTrust contacted OpSec to purchase 54,300 rolls of laminate to be used in ID Cards produced for the Commonwealth of Pennsylvania. MorphoTrust specified that it needed laminate with specialized security features, including holographic images provided by the Commonwealth of Pennsylvania and certain print details visible only under ultraviolet light ("Security Laminate").

11.     On or about October 29, 2013, MorphoTrust sent OpSec Purchase Order No. 41-GK3203PA  ("October Purchase Order") for the Security Laminate to be manufactured and shipped by OpSec from October 29, 2013 through December 22, 2014.  A copy of the October Purchase Order is attached as Exhibit A.

12.     As indicated on each of MorphoTrust's purchase orders, the October Purchase Order included terms and conditions applicable to MorphoTrust's order for Security Laminate ("Terms and Conditions").  A copy of MorphoTrust's Terms and Conditions is attached as Exhibit B.

3

13.     On or about October 30, 2013, OpSec sent a price quotation ("Confirmation Form") confirming the details of MorphoTrust's October Purchase Order for Security Laminate. A copy of OpSec's Confirmation Form is attached as Exhibit C.

14.     By sending MorphoTrust the Confirmation Form, OpSec acknowledged that MorphoTrust's October Purchase Order became "a binding contract upon the terms and conditions set forth [in the October Purchase Order] upon acceptance by Seller, either by acknowledgment or commencement of performance." *See* Terms & Conditions ¶ 3.

15.     The relationship between MorphoTrust and OpSec is governed by the October Purchase Order.

16.     Under paragraph 10 of the Terms and Conditions, OpSec, among other things, "warrant[ed] that all articles will be new and conform to applicable specifications, drawings, descriptions and samples, and will be merchantable, of good workmanship and material fit for the particular purpose or purposes for which intended, and free from defect . . . ." *See* Terms & Conditions ¶ 10.

17.     OpSec further agreed "to reimburse and/or pay for all costs, penalties, interest and attorney's fees resulting from product recalls and/or returns or liquidated damages assessment to the extent such events result from due to defective products or work of the Seller." *See* Terms & Conditions ¶ 12.

### DEFECTIVE SECURITY LAMINATE MANUFACTURED AND SOLD BY OPSEC

18.     OpSec manufactured the Security Laminate in its Lancaster facility and began shipping it to MorphoTrust beginning in January 2014.

4

19.     From January 7, 2014 to the present, OpSec manufactured and shipped approximately 850 rolls of Security Laminate every two weeks under Purchase Order Nos. 41-GK3203PA (Revision 3) and PO001488, copies of which are attached as Exhibits D and E, respectively.

20.     Purchase Order Nos. 41-GK3203PA and PO001488 are governed by the same Terms and Conditions included in the October Purchase Order.

21.     MorphoTrust used the Security Laminate manufactured by OpSec in the ID Cards that MorphoTrust produced for the Commonwealth of Pennsylvania.

22.     On or about February 25, 2015, the Commonwealth of Pennsylvania Department of Transportation ("PA DOT") notified MorphoTrust that the PA DOT received a consumer complaint regarding a defect in the holographic image on the consumer's ID Card. Specifically, the holographic image did not contain the abbreviation for Pennsylvania, "PA." Instead, the holographic image read "AP."

23.     Shortly thereafter, the PA DOT directed MorphoTrust to produce new ID Cards as replacements for all ID Cards produced by MorphoTrust that were made with OpSec's defective Security Laminate.

24.     In an email dated March 2, 2015, Bob Eckel, President and CEO of MorphoTrust, notified OpSec of the defects in the Security Laminate. A copy of Mr. Eckel's email is attached as Exhibit F.

5

25.     In accordance with the PA DOT's request, MorphoTrust promptly produced new ID Cards. As of July 13, 2015, MorphoTrust has reprinted 463,347 ID Cards at its own expense in excess of $800,000.

26.     OpSec has failed to provide a reimbursement for the defective Security Laminate, or to pay the costs incurred by MorphoTrust in producing the corrected ID Cards.

## COUNT I
## BREACH OF CONTRACT

27.     MorphoTrust incorporates all of the allegations set forth in the preceding paragraphs as if fully set forth and restated herein.

28.     Both MorphoTrust and OpSec are merchants within the meaning of the Pennsylvania Commercial Code.

29.     A contract existed between MorphoTrust and OpSec.

30.     The contract between MorphoTrust and OpSec is governed by the Terms and Conditions of MorphoTrust's purchase orders. *See* Exhibits A, B, D, and E.

31.     MorphoTrust paid for the defective Security Laminate in accordance with the terms set forth in the purchase orders.

32.     OpSec breached the express terms of the Terms and Conditions of MorphoTrust's purchase orders by providing MorphoTrust with Security Laminate that displayed defects.

6

33.     As a result of OpSec's breach of contract, MorphoTrust has incurred and will continue to incur expenses in producing new ID Cards to replace the ID Cards made with defective Security Laminate.

34.     In addition, MorphoTrust has incurred and will continue to incur damages in the form of attorney's fees and costs.

## COUNT II
## BREACH OF EXPRESS WARRANTIES

35.     MorphoTrust incorporates all of the allegations set forth in the preceding paragraphs as if fully set forth and restated herein.

36.     Pursuant to the Terms and Conditions of MorphoTrust's purchase orders, OpSec expressly "warrant[ed] that all articles will be new and conform to applicable specifications, drawings, descriptions and samples, and will be merchantable, of good workmanship and material fit for the particular purpose or purposes for which intended, and free from defect . . . ." Terms & Conditions ¶ 10.

37.     OpSec breached these express warranties because the defective Security Laminate did not conform to MorphoTrust's specifications, was not of merchantable quality, was not fit for MorphoTrust's purposes, and was not free of defects.

38.     MorphoTrust relied upon OpSec's express warranties in selecting OpSec as a vendor and in placing purchase orders with OpSec.

7

39.     As a direct and proximate result of this breach, MorphoTrust has sustained damages, including the expenses it incurred and will continue to incur to produce replacement ID Cards, attorney's fees, and costs.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

40.     MorphoTrust incorporates all of the allegations set forth in the preceding paragraphs as if fully set forth and restated herein.

41.     Both MorphoTrust and OpSec are merchants within the meaning of the Pennsylvania Commercial Code.

42.     OpSec implicitly warranted that the Security Laminate was merchantable.

43.     OpSec breached this implied warranty because the defective Security Laminate was not merchantable.

44.     As a direct and proximate result of this breach, MorphoTrust has sustained damages, including the expenses it incurred and will continue to incur to produce replacement ID Cards, attorney's fees, and costs.

WHEREFORE, plaintiff MorphoTrust demands judgment in its favor and against OpSec and relief on its Complaint for the following damages:

a.      Compensatory damages in excess of the minimum jurisdictional amount, including costs already incurred and to be incurred by MorphoTrust in processing and producing new ID Cards as replacements for the ID Cards made with defective Security Laminate;

8

b.      Reimbursement of its reasonable attorney's fees incurred in this action;

c.      Reimbursement of the costs incurred in this action; and

d.      Such other relief as the Court deems just and proper.

Samuel W. Silver (I.D. No. 56596)
Amey J. Park (I.D. No. 316024)
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA  19103
Telephone: (215) 751-2309; 2496
Facsimile: (215) 751-2205
Email: ssilver@schnader.com
       apark@schnader.com

*Attorneys for Plaintiff MorphoTrust USA, Inc.*

Dated:  July 23, 2015

# EXHIBIT A



| Purchase Order | |
|---|---|
| Purchase Order No. | 41-GK3203PA |
| Date | 10/29/2013 |

**Bill To:** MorphoTrust USA
296 Concord Rd.
Billerica, MA 01821
AccountsPayableES@MorphoTrust.com

**Vendor:**
OPSEC SECURITY, INC.
PO Box 10155
Lancaster PA  17605-0155

**Ship To:** MorphoTrust USA
LIFTGATE REQUIRED
6345 FLANK DR, STE 1800

HARRISBURG PA  17112

^ Changed Since the Previous Revision

**Non-Taxable**          **Tax ID  04-3320515**

| Shipping Method | | Payment Terms | | Confirm With | | | | Page | |
|---|---|---|---|---|---|---|---|---|---|
| DELIVER | | NET 30 | | | | | | 1 | |
| L/N | Item Number | Description | | Due Date | U/M | Ordered | Unit Price | Ext. Price | |
| | MorphoTrust Number | | Item Revision | Dock | | | | | |
| 1 | 76-0109-901 7001815 | OVERLAY, PENN DOT 2011 FRONT ISIS S REV O 04/19/13 ISS2 | | 1/6/2014 Origin | ROLL | 1,700.00000 | $ 26.78000 | $ 45,526.00 | |
| 2 | 76-0109-901 7001815 | OVERLAY, PENN DOT 2011 FRONT ISIS S REV O 04/19/13 ISS2 | | 1/20/2014 Origin | ROLL | 850.00000 | $ 26.78000 | $ 22,763.00 | |
| 3 | 76-0109-901 7001815 | OVERLAY, PENN DOT 2011 FRONT ISIS S REV O 04/19/13 ISS2 | | 2/3/2014 Origin | ROLL | 850.00000 | $ 26.78000 | $ 22,763.00 | |
| 4 | 76-0109-901 7001815 | OVERLAY, PENN DOT 2011 FRONT ISIS S REV O 04/19/13 ISS2 | | 2/17/2014 Origin | ROLL | 850.00000 | $ 26.78000 | $ 22,763.00 | |
| 5 | 76-0109-901 7001815 | OVERLAY, PENN DOT 2011 FRONT ISIS S REV O 04/19/13 ISS2 | | 3/3/2014 Origin | ROLL | 850.00000 | $ 26.78000 | $ 22,763.00 | |
| 6 | 76-0109-901 7001815 | OVERLAY, PENN DOT 2011 FRONT ISIS S REV O 04/19/13 ISS2 | | 3/17/2014 Origin | ROLL | 850.00000 | $ 26.78000 | $ 22,763.00 | |
| 7 | 76-0109-901 7001815 | OVERLAY, PENN DOT 2011 FRONT ISIS S REV O 04/19/13 ISS2 | | 3/31/2014 Origin | ROLL | 850.00000 | $ 26.78000 | $ 22,763.00 | |
| 8 | 76-0109-901 7001815 | OVERLAY, PENN DOT 2011 FRONT ISIS S REV O 04/19/13 ISS2 | | 4/14/2014 Origin | ROLL | 850.00000 | $ 26.78000 | $ 22,763.00 | |
| 9 | 76-0109-901 7001815 | OVERLAY, PENN DOT 2011 FRONT ISIS S REV O 04/19/13 ISS2 | | 4/28/2014 Origin | ROLL | 850.00000 | $ 26.78000 | $ 22,763.00 | |
| 10 | 76-0109-901 7001815 | OVERLAY, PENN DOT 2011 FRONT ISIS S REV O 04/19/13 ISS2 | | 5/12/2014 Origin | ROLL | 850.00000 | $ 26.78000 | $ 22,763.00 | |
| 11 | 76-0109-901 | OVERLAY, PENN DOT 2011 FRONT ISIS S | | 5/26/2014 | ROLL | 850.00000 | $ 26.78000 | $ 22,763.00 | |

# MorphoTrust USA

**296 CONCORD RD**
**BILLERICA MA   01821**

| Purchase Order | |
|---|---|
| Purchase Order No. | 41-GK3203PA |
| Date | 10/29/2013 |

**Vendor:**

OPSEC SECURITY, INC.
PO Box 10155
Lancaster PA   17605-0155

**Ship To:**

MorphoTrust USA
LIFTGATE REQUIRED
6345 FLANK DR, STE 1800
HARRISBURG PA   17112

**Non-Taxable**          **Tax ID  04-3320515**

^ Changed Since the Previous Revision

| Shipping Method | | Payment Terms | | Confirm With | | | | Page |
|---|---|---|---|---|---|---|---|---|
| DELIVER | | NET 30 | | | | | | 2 |
| L/N | Item Number | Description | | Due Date | U/M | Ordered | Unit Price | Ext. Price |
| | MorphoTrust  Number | Item Revision | | FOB | | | | |
| | 7001815 | REV O  04/19/13  ISS2 | | Origin | | | | |
| 12 | 76-0109-901 | OVERLAY, PENN DOT 2011 FRONT ISIS S | 6/9/2014 | | ROLL | 850.00000 | $ 26.78000 | $ 22,763.00 |
| | 7001815 | REV O  04/19/13  ISS2 | | Origin | | | | |
| 13 | 76-0109-901 | OVERLAY, PENN DOT 2011 FRONT ISIS S | 7/7/2014 | | ROLL | 850.00000 | $ 26.78000 | $ 22,763.00 |
| | 7001815 | REV O  04/19/13  ISS2 | | Origin | | | | |
| 14 | 76-0109-901 | OVERLAY, PENN DOT 2011 FRONT ISIS S | 7/21/2014 | | ROLL | 850.00000 | $ 26.78000 | $ 22,763.00 |
| | 7001815 | REV O  04/19/13  ISS2 | | Origin | | | | |
| 15 | 76-0109-901 | OVERLAY, PENN DOT 2011 FRONT ISIS S | 8/4/2014 | | ROLL | 850.00000 | $ 26.78000 | $ 22,763.00 |
| | 7001815 | REV O  04/19/13  ISS2 | | Origin | | | | |
| 16 | 76-0109-901 | OVERLAY, PENN DOT 2011 FRONT ISIS S | 8/18/2014 | | ROLL | 850.00000 | $ 26.78000 | $ 22,763.00 |
| | 7001815 | REV O  04/19/13  ISS2 | | Origin | | | | |
| 17 | 76-0109-901 | OVERLAY, PENN DOT 2011 FRONT ISIS S | 9/1/2014 | | ROLL | 850.00000 | $ 26.78000 | $ 22,763.00 |
| | 7001815 | REV O  04/19/13  ISS2 | | Origin | | | | |
| 18 | 76-0109-901 | OVERLAY, PENN DOT 2011 FRONT ISIS S | 9/15/2014 | | ROLL | 850.00000 | $ 26.78000 | $ 22,763.00 |
| | 7001815 | REV O  04/19/13  ISS2 | | Origin | | | | |
| 19 | 76-0109-901 | OVERLAY, PENN DOT 2011 FRONT ISIS S | 9/29/2014 | | ROLL | 850.00000 | $ 26.78000 | $ 22,763.00 |
| | 7001815 | REV O  04/19/13  ISS2 | | Origin | | | | |
| 20 | 76-0109-901 | OVERLAY, PENN DOT 2011 FRONT ISIS S | 10/13/2014 | | ROLL | 850.00000 | $ 26.78000 | $ 22,763.00 |
| | 7001815 | REV O  04/19/13  ISS2 | | Origin | | | | |
| 21 | 76-0109-901 | OVERLAY, PENN DOT 2011 FRONT ISIS S | 10/27/2014 | | ROLL | 850.00000 | $ 26.78000 | $ 22,763.00 |
| | 7001815 | REV O  04/19/13  ISS2 | | Origin | | | | |

# MorphoTrust USA

296 CONCORD RD
BILLERICA MA   01821

| Purchase Order | |
|---|---|
| Purchase Order No. | 41-GK3203PA |
| Date | 10/29/2013 |

**Vendor:**

OPSEC SECURITY, INC.
PO Box 10155
Lancaster PA   17605-0155

**Ship To:**

MorphoTrust USA
LIFTGATE REQUIRED
6345 FLANK DR, STE 1800
HARRISBURG PA   17112

**Non-Taxable**          **Tax ID** 04-3320515

^ Changed Since the Previous Revision

| Shipping Method | | Payment Terms | | | Confirm With | | | | Page |
|---|---|---|---|---|---|---|---|---|---|
| DELIVER | | NET 30 | | | | | | | 3 |
| L/N | Item Number | Description | | | Due Date | U/M | Ordered | Unit Price | Ext. Price |
| | MorphoTrust Number | | Item Revision | | FOB | | | | |
| 22 | 76-0109-901 | OVERLAY, PENN DOT 2011 FRONT ISIS S | | | 11/10/2014 | ROLL | 850.00000 | $ 26.78000 | $ 22,763.00 |
| | 7001815 | | REV O  04/19/13  ISS2 | | Origin | | | | |
| 23 | 76-0109-901 | OVERLAY, PENN DOT 2011 FRONT ISIS S | | | 11/24/2014 | ROLL | 850.00000 | $ 26.78000 | $ 22,763.00 |
| | 7001815 | | REV O  04/19/13  ISS2 | | Origin | | | | |
| 24 | 76-0109-901 | OVERLAY, PENN DOT 2011 FRONT ISIS S | | | 12/8/2014 | ROLL | 850.00000 | $ 26.78000 | $ 22,763.00 |
| | 7001815 | | REV O  04/19/13  ISS2 | | Origin | | | | |
| 25 | 76-0109-901 | OVERLAY, PENN DOT 2011 FRONT ISIS S | | | 12/22/2014 | ROLL | 850.00000 | $ 26.78000 | $ 22,763.00 |
| | 7001815 | | REV O  04/19/13  ISS2 | | Origin | | | | |
| 26 | 76-0109-901 | OVERLAY, PENN DOT 2011 FRONT ISIS S | | | 10/29/2013 | ROLL | 850.00000 | $ 26.78000 | $ 22,763.00 |
| | 7001815 | | REV O  04/19/13  ISS2 | | Origin | | | | |

## Nonconforming Material

When it is determined that the supplier is responsible for the nonconformance of material, the supplier is required to respond to MorphoTrust USA for root cause and remedial action. Failure to respond within the timeframe requested shall constitute a material breach of contract. MorphoTrust approval is required before production of items controlled by a MorphoTrust drawing, under this order if changes to any of the following aspects of the item have occurred since the most recent delivery of the item to MorphoTrust:

1. Changes to the design, material, software or performance parameters;
2. Changes to the critical production processes;
3. Changes in location, layout, or ownership of the production facility.

*If the item(s) are going End of Life, please advise buyer.*

   \* For Shipping Terms & Conditions email: RequiredShipMethods@MorphoTrust.com
   \* For Purchase Order Terms & Conditions email: TermsAndConditions@MorphoTrust.com

| Subtotal | $ 614,601.00 |
|---|---|
| Trade Discount | $ 0.00 |
| Freight | $ 0.00 |
| Miscellaneous | $ 0.00 |
| Tax | $ 0.00 |
| Order Total | $ 614,601.00 |
| Vendor ID | 1014 |

Authorized Signature,      gkoula

# EXHIBIT B

**MORPHOTRUST USA PURCHASE ORDER TERMS AND CONDITIONS**

1. **DEFINITIONS.** The word "articles" means the goods, products, materials, supplies, parts, assemblies, equipment, software, technical data, drawings, services or other items covered by this purchase order. "Buyer" means MorphoTrust USA, Inc. or its subsidiaries or affiliates, as applicable. "Seller" means the party identified on the front of this purchase order from whom Buyer is purchasing the articles.

2. **PACKING AND SHIPPING.** Deliveries shall be made as specified without charge for boxing, crating, carting, or storage unless otherwise specified, and articles shall be suitably packed to secure lowest transportation costs, and in accordance with the requirements of common carriers, and in such manner as to assure against damage from weather or transportation. Articles shall be described on bills of lading in accordance with current Motor Freight or Uniform Freight Classification, whichever is applicable. Packing lists shall accompany each box or package shipment. Buyer's count or weight shall be final and conclusive on shipments not accompanied by packing lists. Except as consented to by Buyer, Seller shall not ship in advance of schedule and shall ship exact quantities ordered. Any agreed upon back orders must be prepaid when less than a minimum freight shipment.

3. **ACCEPTANCE OF PURCHASE ORDER.** This purchase order constitutes Buyer's offer to buy and shall become a binding contract upon the terms and conditions set forth herein upon acceptance by Seller, either by acknowledgment or commencement of performance. None of the terms and conditions (including prices and delivery dates) contained in this purchase order may be added to, modified, superseded or otherwise altered except by a written instrument signed by an authorized representative of Buyer and delivered by Buyer to Seller, and each shipment received by Buyer from Seller shall be deemed to be only upon the terms and conditions contained in this purchase order except as they may be added to, modified, superseded or otherwise altered, notwithstanding any terms and conditions that may be contained in any acknowledgment, invoice or other form of Seller and notwithstanding Buyer's act of accepting or paying for any shipment or similar act of Buyer.

4. **PROVISION OF HARDWARE OR HARDWARE COMPONENTS.** If the Seller supplies any hardware or hardware components to Buyer under this purchase order, such hardware shall: (1) not include any software or firmware; or (2) unless agreed in advance and in writing by Buyer's Chief Security Officer or Chief Compliance Officer, only include software or firmware that is either (i) generally available to the public (sold from stock at retail selling points without restriction by means of over-the-counter transactions, mail order transactions, electronic transactions, or telephone transactions) and designed for installation by the user without further substantial support by the [third party]; or (ii) in the public domain (not protected by patent or copyright and subject to use and appropriation by anyone). Notwithstanding the foregoing, if Seller is a Safran or Morpho company that is affiliated with Buyer, such Safran or Morpho company shall not supply Seller with hardware containing any software or firmware unless agreed in advance and in writing by Buyer's Chief Security Officer or Chief Compliance Officer.

5. **U.S. CITIZENSHIP REQUIREMENT**. If Seller is a vendor, consultant, subcontractor, placement service, or any other manner of service provider to Buyer, then unless agreed in advance and in writing by Buyer's Chief Security Officer or Chief Compliance Officer, Seller shall ensure that all of the personnel that Seller makes available to Buyer shall be only United States citizens who have passed a background check by Buyer's trusted third party background check service provider. The term "United States citizen" does not include dual nationals, i.e., U.S. citizens who are also citizens of another country are not "U.S. citizens" for purposes of this requirement. Buyer will provide the required background check forms that Seller personnel shall return to Buyer's Chief Security Officer, and Buyer's Chief Security Officer will notify Seller in writing whether such Seller personnel has or has not passed the background check. Seller shall not make such personnel available to Buyer until after Buyer's Chief Security Officer or Chief Compliance Officer have notified Seller in writing that its personnel have passed the background check. It shall be a material breach of this purchase order by Seller if any of Seller's personnel begin to render services to or on behalf of Buyer before passing Buyer's required background check. All Seller U.S. citizen personnel that visit Buyer's facilities shall be escorted by Buyer personnel at all times.

6. **BUYER DEVELOPED SOFTWARE**. If under this purchase order, Buyer provides Seller with Buyer developed software in furtherance of Seller's contract with any U.S. federal, state or local government entity, then unless agreed in advance and in writing by Buyer's Chief Security Officer or Chief Compliance Officer, Seller shall not provide, share, allow access to, or otherwise disclose any such Buyer developed software to anyone not employed by Buyer or the U.S. federal, state or local government entity customer of Seller.

7. **APPROVAL REQUIREMENT FOR CONSULTING SERVICES**. Any consulting services that are provided by third parties to Buyer require the advance written approval of the United States Government. If Seller is being engaged by Buyer to provide consulting services, then Seller agrees that it shall not begin to provide consulting services to or on behalf of Buyer unless and until Buyer's Chief Security Officer or Chief Compliance Officer provides Seller with written notice that Seller may begin to provide such services, and that Seller's commencement of services before such Buyer notification shall constitute a material breach of this purchase order by Seller. If Seller receives written notice from Buyer of the U.S. Government's approval, such notice may include additional terms and conditions that the U.S. Government requires be imposed upon Buyer and Seller for Seller's rendering of the consulting services. Seller agrees that its acceptance of these additional terms and conditions is made by either (1) Seller commencing performance of its consulting services at any time after receiving such notice from Buyer, or (2) notifying Buyer in writing that Seller accepts such additional terms and conditions.

In the course of the Seller's rendering of services to or on behalf of Buyer, no Seller U.S. citizen personnel using individual or collective DMV (or equivalent agency) records or other U.S. federal, state or local government entity databases may make data inquiries, compilations, or cross-references of any U.S. government contract information (including, but not limited to, all data and information obtained or accessed pursuant to the government contract, law

2

enforcement information, U.S. and foreign citizen personally identifiable information, software, source code, technology and trade secrets, passport and border crossing card stock or other security features and related consumable items), unless directly requested by the local, state, or federal entities themselves. Any data inquiries, compilations, or cross-references of U.S. government contract information across more than one state database shall require the approval in writing of the U.S. Government. If Seller learns of any unauthorized disclosure of such U.S. government contract information to any third party, such breach or suspected breach shall be immediately reported by Seller to Buyer's Chief Compliance Officer or Chief Security Officer.

8. **TAXES.** Buyer shall not be liable for any federal, state or local taxes unless separately stated on this purchase order and billed as a separate item.

9. **TERMS OF PAYMENT.** Absent contrary provision on the face hereof, terms of payment are as follows: (a) in the case of articles not installed by or under supervision of Seller - thirty (30) days net from date of Buyer's receipt of conforming articles or Seller's correct invoice, whichever is later; (b) in the case of articles installed by or under supervision of Seller - thirty (30) days net from date of invoice or acceptance by the end user customer, whichever is later; (c) in the case of articles for destination outside the United States - by satisfactory irrevocable letter of credit or sight draft with documents attached as Seller may elect. All payments shall be in legal currency of the United States. Buyer shall be entitled at all times to set off any amount owing at any time from Seller to Buyer against any amount payable at any time to Seller by Buyer. Seller's invoices shall bear the exact same prices and terms or authorization for changes must be received by Buyer in writing prior to shipment of any articles.

10. **WARRANTY.** Seller warrants that all articles will be new and conform to applicable specifications, drawings, descriptions and samples, and will be merchantable, of good workmanship and material fit for the particular purpose or purposes for which intended, and free from defect, claim, encumbrance or lien and such warranty shall apply for a period of one (1) year from the Seller's acceptance of the articles. Unless manufactured pursuant to detailed design furnished by Buyer, Seller assumes design responsibility and warrants the articles to be free from design defect and suitable for the purposes intended by Buyer. Seller's warranties herein, together with its service guarantees, shall run to Buyer and its customers or users of the articles and shall not be deemed to be exclusive. Buyer's inspection, approval, acceptance, use of or payment for all or any part of the articles shall in no way affect its warranty rights whether or not a breach of warranty is evident at the time.

11. **INSPECTION.** The articles may be inspected by the Buyer at the time of delivery, installation, and all other times and places and at any stage of production as may be specified by Buyer, and if at the premises of Seller, without additional charge, Seller shall provide all reasonable facilities and assistance required for sale and convenient test and inspection. The foregoing shall not relieve Seller of its obligation to make full and adequate test and inspection. Buyer may base acceptance or rejection of any or all articles on inspection by sampling. If, upon inspection, any of the articles shall be found to be defective in material or workmanship, or otherwise not in conformity with the requirements of this order, Buyer may, in addition to its

3

other rights, (a) require prompt correction or replacement thereof at Seller's expense, including transportation charges; or (b) rework, or have reworked, any such articles at Seller's expense for the purpose of conforming the articles to contractual requirements; or (c) reject any such articles and require the immediate removal thereof, Buyer to be repaid the full invoice price therefor plus transportation charges; or (d) cancel the contract in whole or in part under Section 8 hereof. From the time of notice of rejection of defective articles upon inspection, or for a breach of warranty, the risk or loss thereof shall be upon Seller until redelivery, if any, to Buyer.

12. **PRODUCT RECALLS OR RETURNS.** Seller agrees to reimburse and/or pay Buyer for all costs, penalties, interest and attorney's fees resulting from product recalls/and or returns or liquidated damages assessment to the extent such events result from defective products or work of the Seller. Buyer shall in writing provide Seller with any such notices of product recalls or returns or liquidated damages assessments promptly upon Buyer's receipt.

13. **TERMINATION**

a. **FOR DEFAULT:** Buyer may, by written notice to Seller, terminate this contract, in whole or from time to time in part; (a) if the Seller fails to deliver the articles or to perform the services strictly within the time specified herein, or if no time is specified, within a reasonable time; (b) if the articles delivered do not conform to contractual requirements or if Seller fails to perform any of the other conditions or provisions of this contract, or so fails to make progress as to endanger performance of the contract in accordance with its terms; or (c) if any proceedings in bankruptcy or insolvency, voluntary or involuntary, are commenced by, or against Seller, or if any receiver is appointed with or without Seller's consent, or if Seller makes any assignment for the benefit of creditors, or if Seller commits any other act of bankruptcy or becomes insolvent or unable to meet its debts as they mature. If this contract is terminated for default, Buyer, in addition to all other rights afforded by law for Seller's breach of contract shall have the right to charge Seller the amount by which the costs of fabricating or procuring the articles set forth in the cancelled contract from another source exceed the prices therefor specified herein and Buyer may set off any such charge against any amounts which may become payable to Seller under the contract or otherwise. Upon such termination Seller will deliver to Buyer any of the articles, parts or materials, for which Buyer shall make written request at or after cancellation and Buyer will pay Seller the fair value of any such property so requested and delivered. If any of the articles are found to be defective or not in conformity with the requirements of the purchase order, Buyer, in addition to any other rights which it may have, shall be entitled to reject and return such goods at Seller's expense and Seller shall not have the right to replace such goods without written authorization from Buyer.

b. **FOR CONVENIENCE OF BUYER:** Buyer may, for its convenience, terminate work under this purchase order, in whole or in part, at any time by giving notice to Seller in writing. Seller will thereupon immediately stop work on this purchase order or the terminated portion thereof and notify any subcontractors to do likewise. Seller shall be entitled to reimbursement for its reasonable actual costs incurred up to and including the date of termination, such costs to be

4

determined in accordance with recognized accounting principles. The total of such claim shall not exceed the pro rata portion of this cancelled purchase order. Where Buyer's customer is a governmental entity and such fact is made known to Seller prior to Seller's acceptance of this purchase order, Seller agrees that its entitlement to reimbursement shall be in accordance with such governmental entity's reimbursement policies where the governmental entity has terminated its contract with Buyer for convenience. Seller shall deliver to Buyer as promptly as possible, and in any event, within fifteen (15) days after receipt of the written notice of termination the statement of claim showing termination costs, such statement to be supplemented within fifteen (15) days from the date thereof by a detailed specification of the amount of termination costs and supporting cost figures. Failure of Seller to submit the statements within the time limits stated shall constitute its consent to effect the termination at no charge to Buyer. In the event of any interruption to Buyer's business, in whole or in part, by reason of fire, flood, windstorm, earthquake, war, terrorism, strike, embargo, acts of God, governmental action, or any cause beyond Buyer's control, Buyer shall have the right to cancel undelivered orders in whole or in part without any cancellation charge or penalty.

14. **CHANGES.** Buyer shall have the right by written notice to change the extent of the work covered by the contract, the drawings, specifications or other description herein, the time, method or place of delivery or the method of shipment or packaging. Upon receipt of any such notice, Seller shall proceed promptly to make the changes in accordance with the terms of the notice. If any such change causes an increase or decrease in the cost or performance or in the time required for performance, an equitable adjustment shall be negotiated promptly and the contract modified in writing accordingly. Seller shall deliver to Buyer as promptly as possible, and in any event, within fifteen (15) days after receipt of change notice, a statement showing the effect of any such change in the delivery dates and prices, such statement to be supplemented within fifteen (15) days from the date thereof by detailed specification of the amount of the price adjustment and supporting cost figures. Failure of Seller to submit the statements within the time limits stated shall constitute its consent to perform the change without increase in price, without claim for material rendered obsolete and without change in delivery schedule.

15. **INFRINGEMENT AND INTELLECTUAL PROPERTY** If this contract includes computer programs, software or firmware of any kind in any form ("software"), Seller hereby grants to Buyer a perpetual, nonexclusive, royalty-free license to use and copy the software for any purpose on any equipment or hardware; notwithstanding the terms of any standard form or purported "shrink wrap" license of Seller, which shall not be binding on Buyer unless such license is executed by an authorized representative of Buyer. The price stated in this contract shall be a one-time license fee, and all terms of this contract shall apply as if the license were a purchase. However, if the software is developed or modified for Buyer, a Buyer's request or to Buyer's specifications, then Section.  The Seller shall defend and indemnify Buyer, its agents, customers and users, from and against any and all loss, damage or liability (including legal expense) for or on account of or resulting from any claim of infringement of any existing or future intellectual property or other proprietary rights relating to the re-sale and/or use of any article furnished under this purchase order. The fact that Buyer furnishes specifications to Seller

5

with respect to any such article, shall neither relieve the Seller from its obligations hereunder nor limit the Seller's liability therefor, nor shall the same be deemed to constitute an undertaking by Buyer to hold Seller harmless against any such claim which arises out of compliance with the specifications.

16. **OWNERSHIP.** Buyer shall be the sole and exclusive owner of all tangible or intangible products, materials, and things that are delivered, produced by, or developed for or in connection with the performance of any services or any goods or software developed or modified for Buyer or to Buyer's specifications, including, without limitation, all designs, inventions, ideas, improvements, graphics, data, computer programs, and all copyrights, patents, trade secrets and other proprietary rights in respect of any of the foregoing (collectively, "Products"). Products does not include general know-how and experience gained prior to development, production, or performance. Seller hereby sells, assigns, and transfers, all Products to Buyer, and shall cooperate with Buyer in obtaining or enforcing any patents or copyrights.

17. **CONFIDENTIAL INFORMATION; USE OF DRAWINGS, SPECIFICATIONS, ETC.** Seller shall not disclose to any third party or use any information whatever concerning the purchase order, or the Buyer's drawings, specifications, samples and other material intended for use herewith, or with respect to any article furnished hereunder, without first obtaining the written consent of Buyer. The Buyer shall retain title at all times to such drawings, specifications, samples and other material, all of which, including copies thereof, upon receipt or upon completion of this order, shall be promptly returned to Buyer. Any knowledge or information which Seller shall have disclosed, or may hereafter disclose, to Buyer in connection with the purchase of the article shall not, unless otherwise specifically agreed upon in writing by Buyer, be deemed to be confidential information and shall be acquired free from any restriction as part of the consideration for this purchase order.

18. **CLAIMS FOR SHORTAGE, ETC.** Buyer agrees to notify Seller promptly upon discovery of any claim for shortage, damage or other cause relating to the articles and no such claim shall be forfeited because of Buyer's payment, acceptance, use of the articles or any similar act of Buyer.

19. **LIMITATION OF LIABILITY.** IN NO EVENT SHALL BUYER BE LIABLE TO SELLER FOR INDIRECT, INCIDENTAL, SPECIAL, OR CONSEQUENTIAL DAMAGES, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS, EVEN IF BUYER HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. IN NO EVENT SHALL BUYER'S LIABILITY TO SELLER, UNDER ANY CAUSE OF ACTION OR THEORY OF RECOVERY, EXCEED THE STATED PURCHASE PRICE OF THOSE ITEMIZED ARTICLES IN THIS PURCHASE ORDER THAT ARE THE SUBJECT OF ANY DISPUTE BETWEEN BUYER AND SELLER.

20. **INDEMNITY.** Seller agrees unconditionally and irrevocably to hold harmless, indemnify and defend Buyer (including its officers, directors, employees, and agents and insurers) from, for, and against any and all claims, demands, lawsuits, losses, damages, injuries, expenses (including attorney fees in bankruptcy or any other proceeding, at trial and on appeal), and other liabilities

6

of any kind of or nature, of or to any person or entity (including Buyer), whether in contract, tort, or otherwise, actually or allegedly arising out of or in connection with the negligence of, or negligent performance, non-performance or breach of this contract by Seller (including its employees, agents, contractors, subcontractors, and consultants), any nonconformity, defect or breach of warranty as to the goods or services, the presence of Seller's agents or employees on Buyer's premises, or any dispute under any bankruptcy law.

21. **COMPLIANCE WITH THE LAW.** Seller shall, in the performance of the contract, comply with all applicable laws, executive orders, regulations, ordinances, proclamations, demands and requisitions of the U.S. Government or of any state or local governmental authority which may now or hereafter govern performance hereunder.

22. **ASSIGNMENT AND SUBCONTRACT.** None of the sums due or to become due nor any of the work to be performed under this contract shall be assigned nor shall Seller subcontract for completed or substantially completed articles or major parts of components thereof without Buyer's prior written consent. Any assignment to which Buyer consents shall be subject to set off or recoupment for any present or future claim that Buyer may have against Seller.

23. **WAIVER.** The failure of Buyer to insist, in any one or more instances, upon the performance of any of the terms, covenants or conditions of this contract or to exercise any right hereunder, shall not be construed as a waiver or relinquishment of the future performance of any such term, covenant, or condition or the future exercise of such right but the obligation of Seller with respect to such future performance shall continue in full force and effect.

24. **MODIFICATION.** The terms and conditions of the purchase and sale contract arising herefrom constitute the entire agreement between Buyer and Seller and supersede all previous communications, representations or agreements between the parties. The contract may be modified only in writing making specific reference thereto and signed by Buyer's purchasing agent or other authorized representative.

25. **RISK OF LOSS.** The risk of loss remains with the Seller until delivery and acceptance of the articles to Buyer and Buyer's customer.

26. **FORCE MAEJURE.** Neither party shall be liable if performance is rendered impossible due to events beyond their control such as acts of God, fire, flood, earthquake, or acts of government provided the party claiming force majeure notifies the other within five (5) days after becoming aware of such event.

27. **TIME IS OF THE ESSENCE.**

28. **GOVERNING LAW AND WAIVER OF JURY TRIAL.** The contract shall be deemed to have been entered into and shall be construed and interpreted in accordance with the laws of Commonwealth of Massachusetts. Seller and Buyer expressly consent to the exclusive jurisdiction of federal and state courts located in Middlesex County, Massachusetts for the

7

adjudication of any issues from or in connection with this contract. Seller, as a condition to transacting business with Buyer, hereby waives and relinquishes any right to a jury trial it may now or hereafter have in any dispute arising out of or relating to this contract.

29. **EQUAL EMPLOYMENT OPPORTUNITY:** The Equal Employment Opportunity clause in Section 202 of the Executive Order 11246, (in the federal regulations at 41 CFR § 60-1.4(c)), Section 503 of the Rehabilitation Act of 1973 (in the federal regulations at 41 CFR § 60- 471.5) and Section 4212 of the Vietnam Era Veterans Readjustment Assistance Act of 1974, as amended, in the federal regulations at 41 CFR § 60- 250.4) are incorporated herein by specific reference.

# EXHIBIT C



Inspired by Technology.  Proven by Experience.

## QUOTATION REFERENCE: 7052- REVISED

Company: MorphoTrust USA
Attention: **Gail Koula**
Quotation Date: October 30, 2013

| Product Description | PA D/L Holo Over laminate |
|---|---|
| OpSec Item | 76-0109-901 |
| Carrier Thickness | 1.5-mil |
| Size | 2.065" x 3.310" |
| Color | Clear |
| Special/Other | Registered holo. patch  w/random invisible UV print and registered taggent |

| | |
|---|---|
| 2014 Calendar Year ✓ | 22,100 rls @$26.78/rl; Total: $591,838 |
| 2015 Calendar Year | 22,100 rls @$27.45/rl; Total: $606,645 |
| 2016 Jan. 1 – June 30 | 10,200 rls @$28.00/rl; Total: $285,600 |
| | |

| Origination | N/C (existing) |
|---|---|



**Prices quoted**
- Shipping charges $100/850 rl delivery
- Based on annual volume as per schedule above
- Based on a 30 month commitment from January 1, 2014 to June 30, 2016
- This offer expires November 18, 2013

**Delivery lead-times**
- As agreed per blanket purchase order, approximately 850 rls every 2 weeks

**Payment Terms**
- To OpSec Security, Inc. Lancaster, PA USA, 30 days DOI, subject to credit approval

**Supply Terms**
- Quantities are subject to +/- 10%
- This quotation is valid for product delivered  January 2014- June 2016, E&OE
- This quotation is subject to OpSec standard terms and conditions of sale attached
- Quotation subject to application trials by customer on the substrate and application equipment

## PLEASE REFER TO ATTACHED OPSEC FULL TERMS & CONDITIONS OF SALE

## GENERAL TERMS AND CONDITIONS

The parties agree that the following terms and conditions (the "Terms and Conditions") shall apply to Buyer's purchase of goods from OpSec Security, Inc ("OpSec")

1        SHIPMENT and DELIVERY: All prices are quoted Ex Works (EXW) OpSec's site of shipment as defined in Incoterms 2010, or the location of OpSec's third party supplier Such prices do not include taxes as defined in Section 5 below, export packaged cost, transportation, freight handling charges, export/import license fee, custom duties and the like, all of which shall be paid by the Buyer, who shall indemnify OpSec against all claims and liabilities therefor Unless otherwise specified in writing, delivery dates are estimates only, and OpSec shall not be liable for any damages, consequential or otherwise, resulting from the failure to deliver the goods by a particular date Buyer shall pay all transportation charges and assume all responsibility for shortage, loss, delay or damage in transit For all purposes of these Terms and Conditions, the carrier shall be considered Buyer's agent

2        FORCE MAJEURE: OpSec shall not be liable for delay in delivery caused by civil insurrection, war, fire, strike, lockout or other labor disturbance, Acts of God, or any delay beyond OpSec's control Further, as OpSec is reliant on the delivery of components from distributors, subcontractors, and vendors, OpSec shall not be liable for delays caused by the aforementioned that are caused for reasons beyond its control

3        PRICES: Prices quoted are in United States Dollars unless specified otherwise in writing and are firm for the period as indicated in the OpSec proposal quotation Prices quoted are subject to change after expiration of this time period Any deviation in Buyer's order may affect the price and shipping dates

4        PAYMENT TERMS: Standard payment terms are thirty (30) days from the earlier of the date of invoice or date of shipment unless special payment terms such as Letter of Credit or Cash in Advance are noted in the proposal quotation, or otherwise agreed to in writing by the parties

5        TAXES and DUTIES: Sales, use, excise, custom duties or similar taxes arising out of or related to the sale, delivery, installation, or use of the goods described herein are not included in the price except as otherwise specified herein All such taxes and duties are the responsibility of Buyer

6        WARRANTY: OpSec warrants the goods covered by these Terms and Conditions to be free from defects in material and workmanship, and in conformance with applicable specifications for the goods This warranty excludes all losses due to misuse, misapplication, storage, unusual climatic conditions, and any other conditions outside the immediate control of OpSec Security, Inc Other manufacturers' materials incorporated into OpSec's goods such as security taggants, security inks, etc shall carry only such applicable manufacturers' warranties

THIS WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR SPECIFIC PURPOSE, WHICH OPSEC HEREBY EXPRESSLY DISCLAIMS.

BUYER'S REMEDIES and LIMITATION OF LIABILITY:
Buyer agrees to inspect all products received from OpSec within 7 days of receipt Buyer shall have the right to reject goods not conforming to applicable specifications, or which have material defects in material and workmanship OpSec will not accept rejection requests or return of products after (6) months of delivery to Buyer OpSec's obligation under these Terms and Conditions is strictly and exclusively limited to repair or replacement of such warranted product or goods that are found by OpSec to be defective in material or workmanship, or not conforming to applicable specifications,
F O B OpSec's plant OpSec shall have the right to remedy such defects at such time or times as may be reasonable in terms of the availability to OpSec of manufacturing materials and plant resources OpSec reserves the right, should OpSec elect, to satisfy its warranty obligations in full by the repayment of all sums paid hereunder by Buyer applicable to the returned products upon the return of such goods to OpSec  IN NO EVENT SHALL OPSEC BE LIABLE FOR ANY CLAIMS BY BUYER OR OTHERWISE, FOR LOSS OF PROFIT OR OTHER CONSEQUENTIAL OR INCIDENTAL DAMAGES ARISING OUT OF ANY OBLIGATION HEREIN.

8. SECURITY INTEREST: Buyer hereby grants to OpSec a security interest in the goods, and all proceeds thereof, to secure payment of the purchase price, and OpSec shall have, upon Buyer's default in payment, or upon the bankruptcy or insolvency of Buyer, in addition to all other rights and remedies, all rights and remedies of a secured creditor under the Uniform Commercial Code, including

the right to immediate possession of the goods Buyer shall execute and deliver all requested financing statements to perfect OpSec's security interest, or at OpSec's option, Buyer authorizes OpSec to use these Terms and Conditions to perfect its security interest Also, until said purchase price has been paid in full, Buyer shall maintain comprehensive physical damage insurance for the full price of the goods and shall include OpSec as loss payee thereon

9. CANCELLATION: Buyer acknowledges that this order is for a custom product which cannot be resold, that Buyer may not cancel this order without liability, and that OpSec's damages for Buyer's cancellation may be difficult to estimate  In the event the Buyer refuses to accept delivery of the goods, or otherwise defaults or repudiates these Terms and Conditions, OpSec shall be entitled to recover from Buyer an amount equal to all of OpSec's damages (including reasonable overhead charges and profit) for such nonacceptance, default or repudiation, and OpSec shall have the right to retain all payments made by Buyer as liquidated damages

10. PATENTS: OpSec warrants that it is not aware of any rightful patent infringement claim related to the goods specified herein  Provided that Buyer gives immediate written notice to OpSec of the commencement or threat of commencement of an infringement claim or suit, OpSec shall have the right to defend, compromise or settle such claims or suits, and OpSec shall indemnify Buyer against the same  OpSec's indemnification obligation under these Terms and Conditions shall not apply to suits that result from Buyer's modifications or processes, or application or use of the product in a manner for which it was not intended

11. ORIGINATION: All originations created or contracted by OpSec are the copyrighted property of OpSec Security, Inc unless explicitly stated otherwise in writing, provided, however, that OpSec shall not use any origination specifically developed for Buyer for any purpose other than the production of the Buyer's products supplied by OpSec

12. PACKAGING,STORAGE and FAILURE TO TAKE DELIVERY: The price quoted for U S  domestic shipment includes standard packing for motor truck shipment  The price quoted for export or airfreight shipments include OpSec's standard airfreight cartons and pallets, if required Export or special packing beyond normal best business practices and security measures shall be at Buyer's instructions and expense  If Buyer fails to take timely delivery of the goods from OpSec's shipment site, Buyer shall pay reasonable storage charges and care and maintenance expenses of the goods  If Buyer fails to take delivery of goods from customs at destination, OpSec shall have the right to charge Buyer for customs fees, return transportation cost to OpSec and a handling fee of $250

13.        COPYING; DRAWINGS; CONFIDENTIALITY:

Specifications, manuals, bills of materials, and drawings provided to Buyer by OpSec, if any, are confidential, and remain the property of OpSec at all times, and are subject to recall by OpSec at any time  Buyer agrees that all such materials and the subject goods, whether in whole or in part, shall be maintained in confidence without disclosure, and further that such materials will not be reproduced, copied or duplicated without prior written approval from OpSec

14. ACCEPTANCE: All orders are subject to a final written acceptance by a senior manager or officer of OpSec  In no event shall these Terms and Conditions or any provision hereof be deemed to be amended in any manner whatsoever unless such amendment is in writing signed by an officer of Buyer and OpSec

15. ASSIGNMENT AND WAIVER: These Terms and Conditions may not be assigned by Buyer without OpSec's prior written consent  OpSec's failure at any time to insist upon strict performance of any condition of these Terms and Conditions shall not be a waiver of any subsequent breach

16.        GENERAL:

(a) These Terms and Conditions shall be governed by the laws of the state of Colorado, USA
(b) OpSec shall be entitled to charge interest at the maximum legal rate allowed by law on all past due payments
(c) Typographical or clerical errors on quotations or proposals are subject to correction
(d) Buyer agrees that these Terms and Conditions supersede any terms on Buyer's Purchase Order.

# EXHIBIT D



| Purchase Order | **CHANGE ORDER** |
| --- | --- |
| Purchase Order No. | 41-GK3203PA |
| Date | 7/22/2014 |
| Revision Number | 3 |

Bill To:
MorphoTrust USA
296 Concord Rd.
Billerica, MA 01821
AccountsPayableES@MorphoTrust.com

Vendor:
OPSEC SECURITY, INC.
PO Box 10155
Lancaster PA   17605-0155

Ship To:
MorphoTrust USA
LIFTGATE REQUIRED
6345 FLANK DR, STE 1800

HARRISBURG PA   17112

**Non-Taxable**          Tax ID  04-3320515

^ Changed Since the Previous Revision

| Shipping Method | | Payment Terms | | Confirm With | | | Page | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| DELIVER | | NET 30 | | | | | 1 | | |
| L/N | Item Number | Description | | Due Date | U/M | Ordered | Unit Price | | Ext. Price |
| | MorphoTrust Number | | Item Revision | Dock | | | | | |
| 1 | 76-0109-901 | OVERLAY, PENN DOT 2011 FRONT ISIS S | | 1/7/2014 | ROLL | 1,700.00000 | $ 26.78000 | | $ 45,526.00 |
| | 7001815 | | REV O 04/19/13 ISS2 | Origin | | | | | |
| 2 | 76-0109-901 | OVERLAY, PENN DOT 2011 FRONT ISIS S | | 1/21/2014 | ROLL | 850.00000 | $ 26.78000 | | $ 22,763.00 |
| | 7001815 | | REV O 04/19/13 ISS2 | Origin | | | | | |
| 3 | 76-0109-901 | OVERLAY, PENN DOT 2011 FRONT ISIS S | | 2/4/2014 | ROLL | 850.00000 | $ 26.78000 | | $ 22,763.00 |
| | 7001815 | | REV O 04/19/13 ISS2 | Origin | | | | | |
| 4 | 76-0109-901 | OVERLAY, PENN DOT 2011 FRONT ISIS S | | 2/18/2014 | ROLL | 850.00000 | $ 26.78000 | | $ 22,763.00 |
| | 7001815 | | REV O 04/19/13 ISS2 | Origin | | | | | |
| 5 | 76-0109-901 | OVERLAY, PENN DOT 2011 FRONT ISIS S | | 3/4/2014 | ROLL | 850.00000 | $ 26.78000 | | $ 22,763.00 |
| | 7001815 | | REV O 04/19/13 ISS2 | Origin | | | | | |
| 6 | 76-0109-901 | OVERLAY, PENN DOT 2011 FRONT ISIS S | | 3/18/2014 | ROLL | 850.00000 | $ 26.78000 | | $ 22,763.00 |
| | 7001815 | | REV O 04/19/13 ISS2 | Origin | | | | | |
| 7 | 76-0109-901 | OVERLAY, PENN DOT 2011 FRONT ISIS S | | 4/1/2014 | ROLL | 850.00000 | $ 26.78000 | | $ 22,763.00 |
| | 7001815 | | REV O 04/19/13 ISS2 | Origin | | | | | |
| 8 | 76-0109-901 | OVERLAY, PENN DOT 2011 FRONT ISIS S | | 4/15/2014 | ROLL | 850.00000 | $ 26.78000 | | $ 22,763.00 |
| | 7001815 | | REV O 04/19/13 ISS2 | Origin | | | | | |
| 9 | 76-0109-901 | OVERLAY, PENN DOT 2011 FRONT ISIS S | | 4/29/2014 | ROLL | 850.00000 | $ 26.78000 | | $ 22,763.00 |
| | 7001815 | | REV O 04/19/13 ISS2 | Origin | | | | | |
| 10 | 76-0109-901 | OVERLAY, PENN DOT 2011 FRONT ISIS S | | 5/13/2014 | ROLL | 850.00000 | $ 26.78000 | | $ 22,763.00 |
| | 7001815 | | REV O 04/19/13 ISS2 | Origin | | | | | |
| 11 | 76-0109-901 | OVERLAY, PENN DOT 2011 FRONT ISIS S | | 5/27/2014 | ROLL | 850.00000 | $ 26.78000 | | $ 22,763.00 |

# MorphoTrust USA

**296 CONCORD RD**
**BILLERICA MA   01821**

| Purchase Order | **CHANGE ORDER** |
|---|---|
| Purchase Order No. | 41-GK3203PA |
| Date | 7/22/2014 |
| Revision Number | 3 |

| Vendor: | Ship To: |
|---|---|
| OPSEC SECURITY, INC.<br>PO Box 10155<br>Lancaster PA   17605-0155 | MorphoTrust USA<br>LIFTGATE REQUIRED<br>6345 FLANK DR, STE 1800<br>HARRISBURG PA   17112 |

**Non-Taxable**        **Tax ID  04-3320515**

^ Changed Since the Previous Revision

| Shipping Method | | Payment Terms | | | Confirm With | | | | Page |
|---|---|---|---|---|---|---|---|---|---|
| DELIVER | | NET 30 | | | | | | | 2 |
| L/N | Item Number | | Description | | Due Date | U/M | Ordered | Unit Price | Ext. Price |
| | MorphoTrust Number | | Item Revision | | FOB | | | | |
| | 7001815 | | | REV O  04/19/13  ISS2 | Origin | | | | |
| 12 | 76-0109-901 | | OVERLAY, PENN DOT 2011 FRONT ISIS S | | 6/10/2014 | ROLL | 850.00000 | $ 26.78000 | $ 22,763.00 |
| | 7001815 | | | REV O  04/19/13  ISS2 | Origin | | | | |
| 13 | 76-0109-901 | | OVERLAY, PENN DOT 2011 FRONT ISIS S | | 7/8/2014 | ROLL | 850.00000 | $ 26.78000 | $ 22,763.00 |
| | 7001815 | | | REV O  04/19/13  ISS2 | Origin | | | | |
| ^14 | 76-0109-901 | | OVERLAY, PENN DOT 2011 FRONT ISIS S | | 7/22/2014 | ROLL | 1,333.00000 | $ 26.78000 | $ 35,697.74 |
| | 7001815 | | | REV O  04/19/13  ISS2 | Origin | | | | |
| | Increased to cover full production using existing taggant ink. | | | | | | | | |
| 15 | 76-0109-901 | | OVERLAY, PENN DOT 2011 FRONT ISIS S | | 8/5/2014 | ROLL | 850.00000 | $ 26.78000 | $ 22,763.00 |
| | 7001815 | | | REV O  04/19/13  ISS2 | Origin | | | | |
| 16 | 76-0109-901 | | OVERLAY, PENN DOT 2011 FRONT ISIS S | | 8/19/2014 | ROLL | 1,700.00000 | $ 26.78000 | $ 45,526.00 |
| | 7001815 | | | REV O  04/19/13  ISS2 | Origin | | | | |
| | ADDITIONA 850 ROLLS ADDED TO THIS DELIVERY TO BRING WAREHOUSE INVENTORY BACK TO STANDARD LEVEL | | | | | | | | |
| 17 | 76-0109-901 | | OVERLAY, PENN DOT 2011 FRONT ISIS S | | 9/2/2014 | ROLL | 850.00000 | $ 26.78000 | $ 22,763.00 |
| | 7001815 | | | REV O  04/19/13  ISS2 | Origin | | | | |
| 18 | 76-0109-901 | | OVERLAY, PENN DOT 2011 FRONT ISIS S | | 9/16/2014 | ROLL | 850.00000 | $ 26.78000 | $ 22,763.00 |
| | 7001815 | | | REV O  04/19/13  ISS2 | Origin | | | | |
| 19 | 76-0109-901 | | OVERLAY, PENN DOT 2011 FRONT ISIS S | | 9/30/2014 | ROLL | 850.00000 | $ 26.78000 | $ 22,763.00 |
| | 7001815 | | | REV O  04/19/13  ISS2 | Origin | | | | |

# MorphoTrust USA

**296 CONCORD RD**
**BILLERICA MA   01821**

| Purchase Order | **CHANGE ORDER** |
|---|---|
| Purchase Order No. | 41-GK3203PA |
| Date | 7/22/2014 |
| Revision Number | 3 |

**Vendor:**

OPSEC SECURITY, INC.
PO Box 10155
Lancaster PA   17605-0155

**Ship To:**

MorphoTrust USA
LIFTGATE REQUIRED
6345 FLANK DR, STE 1800
HARRISBURG PA   17112

**Non-Taxable**          **Tax ID  04-3320515**

^ Changed Since the Previous Revision

| Shipping Method | | Payment Terms | | Confirm With | | | | Page |
|---|---|---|---|---|---|---|---|---|
| DELIVER | | NET 30 | | | | | | 3 |
| L/N | Item Number | Description | | Due Date | U/M | Ordered | Unit Price | Ext. Price |
| | MorphoTrust  Number | | Item Revision | FOB | | | | |
| 20 | 76-0109-901 | OVERLAY, PENN DOT 2011 FRONT ISIS S | | 10/14/2014 | ROLL | 850.00000 | $ 26.78000 | $ 22,763.00 |
| | 7001815 | | REV O  04/19/13 ISS2 | Origin | | | | |
| 21 | 76-0109-901 | OVERLAY, PENN DOT 2011 FRONT ISIS S | | 10/28/2014 | ROLL | 850.00000 | $ 26.78000 | $ 22,763.00 |
| | 7001815 | | REV O  04/19/13 ISS2 | Origin | | | | |
| 22 | 76-0109-901 | OVERLAY, PENN DOT 2011 FRONT ISIS S | | 11/11/2014 | ROLL | 850.00000 | $ 26.78000 | $ 22,763.00 |
| | 7001815 | | REV O  04/19/13 ISS2 | Origin | | | | |
| 23 | 76-0109-901 | OVERLAY, PENN DOT 2011 FRONT ISIS S | | 11/25/2014 | ROLL | 850.00000 | $ 26.78000 | $ 22,763.00 |
| | 7001815 | | REV O  04/19/13 ISS2 | Origin | | | | |
| 24 | 76-0109-901 | OVERLAY, PENN DOT 2011 FRONT ISIS S | | 12/9/2014 | ROLL | 850.00000 | $ 26.78000 | $ 22,763.00 |
| | 7001815 | | REV O  04/19/13 ISS2 | Origin | | | | |
| 25 | 76-0109-901 | OVERLAY, PENN DOT 2011 FRONT ISIS S | | 12/23/2014 | ROLL | 850.00000 | $ 26.78000 | $ 22,763.00 |
| | 7001815 | | REV O  04/19/13 ISS2 | Origin | | | | |

## Nonconforming Material

When it is determined that the supplier is responsible for the nonconformance of material, the supplier is required to respond to MorphoTrust USA for root cause and remedial action. Failure to respond within the timeframe requested shall constitute a material breach of contract. MorphoTrust approval is required before production of items controlled by a MorphoTrust drawing, under this order if changes to any of the following aspects of the item have occurred since the most recent delivery of the item to MorphoTrust:

1. Changes to the design, material, software or performance parameters;
2. Changes to the critical production processes;
3. Changes in location, layout, or ownership of the production facility.

*If the item(s) are going End of Life, please advise buyer.*

* For Shipping Terms & Conditions email: RequiredShipMethods@MorphoTrust.com
* For Purchase Order Terms & Conditions email: TermsAndConditions@MorphoTrust.com

| | |
|---|---|
| Subtotal | $ 627,535.74 |
| Trade Discount | $ 0.00 |
| Freight | $ 0.00 |
| Miscellaneous | $ 0.00 |
| Tax | $ 0.00 |
| Order Total | $ 627,535.74 |
| Vendor ID | 1014 |

Authorized Signature,     gkoula

# EXHIBIT E



| Purchase Order | |
|---|---|
| **Purchase Order No.** | PO001488 |
| **Date** | 10/22/2014 |
| **Revision Number** | 2 |

**Bill To:**
MorphoTrust USA
296 Concord Rd.
Billerica, MA 01821
AccountsPayable@MorphoTrust.com

**Vendor:**
OPSEC SECURITY, INC.
PO Box 10155
Lancaster PA   17605-0155

**Ship To:**
MorphoTrust USA
LIFTGATE REQUIRED
6345 FLANK DR, STE 1800

HARRISBURG PA   17112

^ Changed Since the Previous Revision

### Non-Taxable            Tax ID  04-3320515

| Shipping Method | | Payment Terms | | Confirm With | | | Page | |
|---|---|---|---|---|---|---|---|---|
| DELIVER | | Net 45 | | | | | 1 | |

| L/N | Item Number | Description | | Due Date | U/M | Ordered | Unit Price | Ext. Price |
|---|---|---|---|---|---|---|---|---|
| | MorphoTrust Number | | Item Revision | Dock | | | | |
| 1 | 76-0109-901 7001815 | OVERLAY, PENN DOT 2011 FRONT ISIS S | REV O  04/19/13  ISS2 | 1/6/2015 Origin | ROLL | 850.00000 | $ 27.45000 | $ 23,332.50 |
| 2 | 76-0109-901 7001815 | OVERLAY, PENN DOT 2011 FRONT ISIS S | REV O  04/19/13  ISS2 | 1/20/2015 Origin | ROLL | 850.00000 | $ 27.45000 | $ 23,332.50 |
| 3 | 76-0109-901 7001815 | OVERLAY, PENN DOT 2011 FRONT ISIS S | REV O  04/19/13  ISS2 | 2/3/2015 Origin | ROLL | 850.00000 | $ 27.45000 | $ 23,332.50 |
| 4 | 76-0109-901 7001815 | OVERLAY, PENN DOT 2011 FRONT ISIS S | REV O  04/19/13  ISS2 | 2/17/2015 Origin | ROLL | 850.00000 | $ 27.45000 | $ 23,332.50 |
| 5 | 76-0109-901 7001815 | OVERLAY, PENN DOT 2011 FRONT ISIS S | REV O  04/19/13  ISS2 | 3/3/2015 Origin | ROLL | 850.00000 | $ 27.45000 | $ 23,332.50 |
| 6 | 76-0109-901 7001815 | OVERLAY, PENN DOT 2011 FRONT ISIS S | REV O  04/19/13  ISS2 | 3/17/2015 Origin | ROLL | 850.00000 | $ 27.45000 | $ 23,332.50 |
| 7 | 76-0109-901 7001815 | OVERLAY, PENN DOT 2011 FRONT ISIS S | REV O  04/19/13  ISS2 | 3/31/2015 Origin | ROLL | 850.00000 | $ 27.45000 | $ 23,332.50 |
| 8 | 76-0109-901 7001815 | OVERLAY, PENN DOT 2011 FRONT ISIS S | REV O  04/19/13  ISS2 | 4/14/2015 Origin | ROLL | 1,250.00000 | $ 27.45000 | $ 34,312.50 |
| 9 | 76-0109-901 7001815 | OVERLAY, PENN DOT 2011 FRONT ISIS S | REV O  04/19/13  ISS2 | 4/28/2015 Origin | ROLL | 850.00000 | $ 27.45000 | $ 23,332.50 |
| 10 | 76-0109-901 7001815 | OVERLAY, PENN DOT 2011 FRONT ISIS S | REV O  04/19/13  ISS2 | 5/12/2015 Origin | ROLL | 850.00000 | $ 27.45000 | $ 23,332.50 |
| 11 | 76-0109-901 | OVERLAY, PENN DOT 2011 FRONT ISIS S | | 5/26/2015 | ROLL | 850.00000 | $ 27.45000 | $ 23,332.50 |

# MorphoTrust USA

**296 CONCORD RD**
**BILLERICA MA   01821**

| Purchase Order | |
|---|---|
| Purchase Order No. | PO001488 |
| Date | 10/22/2014 |
| Revision Number | 2 |

| Vendor: | Ship To: |
|---|---|
| OPSEC SECURITY, INC.<br>PO Box 10155<br>Lancaster PA   17605-0155 | MorphoTrust USA<br>LIFTGATE REQUIRED<br>6345 FLANK DR, STE 1800<br>HARRISBURG PA   17112 |

**Non-Taxable**          **Tax ID  04-3320515**

^ Changed Since the Previous Revision

| Shipping Method | | Payment Terms | | Confirm With | | | Page | |
|---|---|---|---|---|---|---|---|---|
| DELIVER | | Net 45 | | | | | 2 | |
| L/N | Item Number | Description | | Due Date | U/M | Ordered | Unit Price | Ext. Price |
| | MorphoTrust  Number | Item Revision | | FOB | | | | |
| | 7001815 | REV O  04/19/13  ISS2 | | Origin | | | | |
| 12 | 76-0109-901<br>7001815 | OVERLAY, PENN DOT 2011 FRONT ISIS S<br>REV O  04/19/13  ISS2 | | 6/9/2015<br>Origin | ROLL | 850.00000 | $ 27.45000 | $ 23,332.50 |
| 13 | 76-0109-901<br>7001815 | OVERLAY, PENN DOT 2011 FRONT ISIS S<br>REV O  04/19/13  ISS2 | | 6/23/2015<br>Origin | ROLL | 850.00000 | $ 27.45000 | $ 23,332.50 |
| 14 | 76-0109-901<br>7001815 | OVERLAY, PENN DOT 2011 FRONT ISIS S<br>REV O  04/19/13  ISS2 | | 7/7/2015<br>Origin | ROLL | 850.00000 | $ 27.45000 | $ 23,332.50 |
| 15 | 76-0109-901<br>7001815 | OVERLAY, PENN DOT 2011 FRONT ISIS S<br>REV O  04/19/13  ISS2 | | 7/21/2015<br>Origin | ROLL | 850.00000 | $ 27.45000 | $ 23,332.50 |
| 16 | 76-0109-901<br>7001815 | OVERLAY, PENN DOT 2011 FRONT ISIS S<br>REV O  04/19/13  ISS2 | | 8/4/2015<br>Origin | ROLL | 850.00000 | $ 27.45000 | $ 23,332.50 |
| 17 | 76-0109-901<br>7001815 | OVERLAY, PENN DOT 2011 FRONT ISIS S<br>REV O  04/19/13  ISS2 | | 8/18/2015<br>Origin | ROLL | 850.00000 | $ 27.45000 | $ 23,332.50 |
| 18 | 76-0109-901<br>7001815 | OVERLAY, PENN DOT 2011 FRONT ISIS S<br>REV O  04/19/13  ISS2 | | 9/1/2015<br>Origin | ROLL | 850.00000 | $ 27.45000 | $ 23,332.50 |
| 19 | 76-0109-901<br>7001815 | OVERLAY, PENN DOT 2011 FRONT ISIS S<br>REV O  04/19/13  ISS2 | | 9/15/2015<br>Origin | ROLL | 850.00000 | $ 27.45000 | $ 23,332.50 |
| 20 | 76-0109-901<br>7001815 | OVERLAY, PENN DOT 2011 FRONT ISIS S<br>REV O  04/19/13  ISS2 | | 9/29/2015<br>Origin | ROLL | 850.00000 | $ 27.45000 | $ 23,332.50 |
| 21 | 76-0109-901<br>7001815 | OVERLAY, PENN DOT 2011 FRONT ISIS S<br>REV O  04/19/13  ISS2 | | 10/13/2015<br>Origin | ROLL | 850.00000 | $ 27.45000 | $ 23,332.50 |

# MorphoTrust USA

**296 CONCORD RD**
**BILLERICA MA   01821**

| Purchase Order | |
|---|---|
| Purchase Order No. | PO001488 |
| Date | 10/22/2014 |
| Revision Number | 2 |

**Vendor:**

OPSEC SECURITY, INC.
PO Box 10155
Lancaster PA   17605-0155

**Ship To:**

MorphoTrust USA
LIFTGATE REQUIRED
6345 FLANK DR, STE 1800
HARRISBURG PA   17112

**Non-Taxable**          **Tax ID  04-3320515**

^ Changed Since the Previous Revision

| Shipping Method | Payment Terms | | Confirm With | | | | Page |
|---|---|---|---|---|---|---|---|
| DELIVER | Net 45 | | | | | | 3 |
| L/N | Item Number | Description | Due Date | U/M | Ordered | Unit Price | Ext. Price |
| | MorphoTrust Number | Item Revision | FOB | | | | |
| 22 | 76-0109-901 | OVERLAY, PENN DOT 2011 FRONT ISIS S | 10/27/2015 | ROLL | 850.00000 | $ 27.45000 | $ 23,332.50 |
| | 7001815 | REV O  04/19/13  ISS2 | Origin | | | | |
| 23 | 76-0109-901 | OVERLAY, PENN DOT 2011 FRONT ISIS S | 11/10/2015 | ROLL | 850.00000 | $ 27.45000 | $ 23,332.50 |
| | 7001815 | REV O  04/19/13  ISS2 | Origin | | | | |
| 24 | 76-0109-901 | OVERLAY, PENN DOT 2011 FRONT ISIS S | 11/24/2015 | ROLL | 850.00000 | $ 27.45000 | $ 23,332.50 |
| | 7001815 | REV O  04/19/13  ISS2 | Origin | | | | |
| 25 | 76-0109-901 | OVERLAY, PENN DOT 2011 FRONT ISIS S | 12/8/2015 | ROLL | 850.00000 | $ 27.45000 | $ 23,332.50 |
| | 7001815 | REV O  04/19/13  ISS2 | Origin | | | | |
| 26 | 76-0109-901 | OVERLAY, PENN DOT 2011 FRONT ISIS S | 12/22/2015 | ROLL | 850.00000 | $ 27.45000 | $ 23,332.50 |
| | 7001815 | REV O  04/19/13  ISS2 | Origin | | | | |

## Nonconforming Material

When it is determined that the supplier is responsible for the nonconformance of material, the supplier is required to respond to MorphoTrust USA for root cause and remedial action. Failure to respond within the timeframe requested shall constitute a material breach of contract. MorphoTrust approval is required before production of items controlled by a MorphoTrust drawing, under this order if changes to any of the following aspects of the item have occurred since the most recent delivery of the item to MorphoTrust:

1. Changes to the design, material, software or performance parameters;
2. Changes to the critical production processes;
3. Changes in location, layout, or ownership of the production facility.

*If the item(s) are going End of Life, please advise buyer.*

   * For Shipping Terms & Conditions email: RequiredShipMethods@MorphoTrust.com
   * For Purchase Order Terms & Conditions email: TermsAndConditions@MorphoTrust.com

| Subtotal | $ 617,625.00 |
|---|---|
| Trade Discount | $ 0.00 |
| Freight | $ 0.00 |
| Miscellaneous | $ 0.00 |
| Tax | $ 0.00 |
| Order Total | $ 617,625.00 |
| Vendor ID | 1014 |

Authorized Signature,   GKOULA